AAS:DMP
F. #2015R00096

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

| | |
|---|---|
| UNITED STATES OF AMERICA | MEMORANDUM OF LAW |
| - against - | Docket No. <u>15-CR-393 (MKB)</u> |
| MUNTHER OMAR SALEH,<br>     also known as<br>     "Abu Omar al-Ramli" and<br>     "Abu Omar ar-Ramli" and<br>FAREED MUMUNI, | |
|                Defendants. | |

– – – – – – – – – – – – – – – – – –X

**THE GOVERNMENT'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS REQUEST FOR AUTHORIZATION
FOR *EX PARTE*, *IN CAMERA* FILING OF ITS MOTION PURSUANT TO
<u>SECTION FOUR OF THE CLASSIFIED INFORMATION PROCEDURES ACT</u>**

ROBERT L. CAPERS
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys
     (Of Counsel)

**PRELIMINARY STATEMENT**

The government respectfully submits this memorandum of law in further support of request for authorization to file ex parte, for the Court's in camera review, its anticipated motion pursuant to Section 4 of the Classified Information Procedures Act ("CIPA") and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. As described below, every federal court to have considered this question has uniformly upheld the use of ex parte filings and in camera proceedings in CIPA Section 4 applications.

**BACKGROUND**

The charges against defendants Munther Saleh and Fareed Mumuni implicate potentially discoverable classified materials. Discovery of classified information in federal criminal cases is governed by CIPA. See United States v. Abu Jihaad, 630 F.3d 102, 140-41 (2d Cir. 2010). Congress enacted CIPA to enable the government to fulfill its duty to protect national security information, while simultaneously complying with its discovery obligations in federal criminal prosecutions. See S. Rep. No. 96-823, 96th Cong., 2d Sess., at 3 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4296. CIPA applies the general law of discovery in criminal cases to classified information, and restricts such discovery of classified information to protect the government's national security interests. See United States v. Klimavicius-Viloria, 144 F.3d 1249, 1260-61 (9th Cir. 1998).

While the government has produced certain classified materials to cleared defense counsel in classified discovery pursuant to an appropriate protective order (see ECF Doc. No. 80), the government anticipates addressing other potentially discoverable classified information in a submission to be filed with the Court ex parte and in camera pursuant to

CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) (hereinafter, the "Section 4 motion").

On September 16, 2016, the government filed a motion for a pretrial conference pursuant to CIPA Section 2. (ECF Doc. No. 81.) The Section 2 conference has been scheduled for September 29, 2016, at 10 a.m. As part of its motion for the pretrial conference, the government sought permission to file its Section 4 motion <u>ex parte</u> and <u>in camera</u>, as expressly permitted by CIPA, the Federal Rules of Criminal Procedure, and well-established case law. (<u>Id.</u> at 4-7).

Defendant Saleh filed an opposition to that request on September 20, 2016 (ECF Doc. No. 82, hereinafter "Def. Mem.") in which he argues that the government should not be permitted to file its Section 4 motion <u>ex parte</u>. For the reasons that follow, the Court should reject Saleh's arguments.

## **ARGUMENT**

I. **THE COURT SHOULD REJECT DEFENDANT SALEH'S OBJECTION TO THE *EX PARTE* AND *IN CAMERA* FILING OF THE GOVERNMENT'S MOTION PURSUANT TO CIPA SECTION 4 AND FRCP 16(d)(1)**

Every single court – in this Circuit and otherwise – to have considered the question whether an application pursuant to CIPA Section 4 should be considered <u>ex parte</u> and <u>in camera</u> has uniformly upheld such proceedings. <u>See</u> <u>Abu-Jihaad</u>, 630 F.3d at 143 (district court "acted well within its discretion in reviewing [CIPA] submissions <u>ex parte</u> and <u>in camera</u>"); <u>United States v. Stewart</u>, 590 F.3d 93, 132-33 (2d Cir. 2009) (rejecting claim that district court erred in reviewing CIPA materials <u>ex parte</u> and <u>in camera</u>); <u>United States v. Aref</u>, 533 F.3d 72, 81 (2d Cir. 2008) (same); <u>see also</u> <u>United States v. Hanna</u>, 661 F.3d 271, 294 (6th Cir. 2011); <u>United States v. Campa</u>, 529 F.3d 980, 995 (11th Cir. 2008); <u>United</u>

States v. O'Hara, 301 F.3d 463, 568-69 (7th Cir. 2002); Klimavicius-Viloria, 144 F.3d at 1261; United States v. Rezaq, 134 F.3d 1121, 1143 (D.C. Cir. 1998); United States v. Yunis, 867 F.2d 617, 620 (D.C. Cir. 1989); United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988).

Indeed, Saleh's application omits the fact that numerous courts in this district have also rejected the precise arguments that he presents, including at least three such applications that are virtually identical to Saleh's in language, arguments and supporting case law.  See United States v. Al Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *2-3 (E.D.N.Y. Aug. 23, 2016) (rejecting virtually identical defense application filed in ECF Doc. No. 51); United States v. Velentzas, No. 15-CR-213 (SJ), 2016 WL 4250304, at *3 (E.D.N.Y. Aug. 10, 2016) (rejecting virtually identical defense application filed in ECF Doc. No. 50); United States v. Isa, No. 11-CR-819 (RRM) (ECF Doc. No. 64) (E.D.N.Y. Sept. 19, 2016) (rejecting similar defense application filed in ECF Doc. No. 20); United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *2-3 (E.D.N.Y. June 24, 2011) (rejecting defense application (ECF Doc. No. 53) filed by same counsel as in the instant case); see also United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *2 (E.D.N.Y. Feb. 3, 2015) (noting that the government's CIPA Section 4 submission "was appropriately filed ex parte and under seal").

A. *Ex Parte* Proceedings Are Appropriate in the Context of CIPA Section 4

Saleh argues that ex parte proceedings are disfavored as a general rule and that the presumption against ex parte proceedings should apply in this case.  (Def. Mem. at 5-6). While Saleh accurately states the general rule that ex parte proceedings are generally disfavored, courts have uniformly found that an exception to the general rule is merited in

3

cases involving classified documents concerning the national security of the United States, as evidenced by the litany of decisions above upholding ex parte proceedings in the context of applications pursuant to Section 4 of CIPA.

Both CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) permit courts to proceed ex parte when faced with classified information that concerns national security. Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4. Section 4 further provides that the United States may demonstrate that the use of such alternatives is warranted through an ex parte, in camera submission to the Court:

> The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Id. CIPA's legislative history makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred. S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980); United States v. Smith, 780 F.2d 1102, 1110 (4th Cir. 1985) (holding that defendant's right to discovery must be balanced against public's interest in non-disclosure).

4

Similarly, Rule 16(d)(1) of the Federal Rules of Criminal Procedure allows a district court to "permit a party to show good cause by a written statement that the court will inspect ex parte" seeking the entry of a protective order "deny[ing], restrict[ing], or defer[ring] discovery or inspection." Fed. R. Crim. P. 16(d)(1). As the Second Circuit has explained, "[t]he Advisory Committee notes to Rule 16 make clear that 'good cause' includes 'the protection of information vital to the national security.'" Aref, 533 F.3d at 78 (quoting Fed. R. Crim. P. 16 advisory committee's note to 1966 amendment). Thus, Rule 16(d)(1) provides an independent basis for the Court to permit the ex parte filing of an application for a protective order governing classified discovery upon a showing that said filing promotes "the protection of information vital to the national security." Id.

Saleh correctly notes that CIPA permits, rather than requires, the Court to allow the government to submit its Section 4 motion ex parte. (Def. Mem. at 4). However, the Second Circuit has affirmed "ex parte consideration of CIPA motions as the rule." Zazi, 2011 WL 2532903, at *2; see also Al Farekh, 2016 WL 4444778, at *2 (defense argument in opposition to ex parte filing of CIPA Section 4 motion "is contrary to Second Circuit precedent and the practice of other courts within this district"); Klimavicius-Viloria, 144 F.3d at 1261 ("Ex parte hearings are generally disfavored. In a case involving classified documents, however, ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use to decide the relevancy of the information.") (internal citation and quotations omitted).

Specifically, the Second Circuit has "recognized that where the government moves to withhold classified information from the defense, 'an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" Abu-Jihaad, 630

5

F.3d at 143 (quoting Aref, 533 F.3d at 81). "The right that [CIPA] section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view." Campa, 529 F.3d at 995; see Sarkissian, 841 F.2d at 965 (same). As Judge Gleeson held in Zazi, "With respect to the government's request to delete irrelevant classified materials from discovery, an adversary proceeding would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory." Zazi, 2011 WL 2532903, at *3.

It is for these reasons that the federal courts have universally and uniformly upheld the use of ex parte filings and in camera proceedings in matters involving national security, such as CIPA Section 4 applications. See authorities cited pp. 2-3 supra. In fact, the government is aware of no instance in which a court has denied the government permission to file a CIPA Section 4 application ex parte. Saleh presents no authority to the contrary; indeed, the cases he cites in support of the proposition that ex parte proceedings are generally disfavored (see Def. Mem. at 5-6) do not involve classified discovery or CIPA proceedings.[1]

Saleh also argues that "[a]bsent exceptional circumstances, the Court should reject the government's ex parte submission here." (Def. Mem. at 5). However, to the extent

---

[1] For instance, United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004), involved an ex parte submission in the context of a bail hearing, while American Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045 (9th Cir. 1995), involved an immigration proceeding. In neither case was classified discovery at issue.

6

Saleh is arguing that the government must show "exceptional circumstances" in order to justify proceeding on an ex parte basis, that argument is contrary to the applicable law and similarly would defeat the very purpose of the applicable discovery rules. The Second Circuit and others have rejected such an "exceptional circumstances" test in the CIPA context. See Abu-Jihaad, 630 F.3d at 143 (rejecting defendant's argument that showing of exceptional circumstances is necessary); United States v. Libby, 429 F. Supp. 2d 18, 25 (D.D.C. 2006) ("First, the Court declines to adopt the defendant's position that he must first have the opportunity to litigate whether the government has established exceptional circumstances before the government can submit to the Court ex parte filings pursuant to Section 4. There is simply no requirement for such a showing in the CIPA, and this Court cannot not judicially require it."), amended by 429 F. Supp. 2d 46 (D.D.C. 2006); see also Isa, No. 11-CR-819 (RRM), ECF Doc. No. 64 at 8 n.5.

      B.      The Court Should Reject Saleh's Arguments Against an *Ex Parte* Proceeding

Saleh raises three principal arguments in opposition to an ex parte Section 4 proceeding, each of which should be rejected.

First, Saleh contends that because his attorney, her associate and her paralegal have top secret security clearance, their security clearance provides adequate protection to permit them to review the government's Section 4 motion in its entirety or at least the government's legal arguments in support of its Section 4 motion. (Def. Mem. at 6, 8-9.) However, that defense counsel may possess a security clearance has no bearing on the propriety of the Court's ex parte review of the government's CIPA Section 4 motion and the discoverability of classified information. Possession of a security clearance neither "mandate[s] an adversary hearing [nor] access to immaterial classified information for which

7

counsel has no legitimate need." Zazi, 2011 WL 2532903, at *3. Classified information may be disclosed only to individuals who both possess the requisite clearance and have a "need to know" the information at issue. See Executive Order 13526, §§ 4.1(a) and 6.1(dd) (requiring that a "need-to-know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance); see also United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) ("[C]learances do not mandate . . . access to immaterial classified information for which counsel has no legitimate need.") (citing Exec. Order No. 13526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009); see generally United States v. Ott, 827 F.2d 473, 477 (9th Cir. 1987) (in the context of FISA, rejecting the notion that "a defendant's due process right to disclosure of [classified] materials turns on the qualifications of his counsel").

Unless and until the Court rules that classified information submitted to the Court in connection with the government's Section 4 motion is discoverable, defense counsel do not have a need to know that information. The purpose of the ex parte CIPA Section 4 proceedings is to allow the Court to make that determination as to the discoverability of classified information – and thus determine whether defense counsel has a need to know the classified information at issue. Therefore, to hold that the proceedings themselves provide defense counsel with the need-to-know is a form of bootstrapping that would negate the very purpose of CIPA Section 4. As the district court noted in Abu-Jihaad:

> [T]he purpose of the Government's [CIPA Section 4] Motion is to permit this Court to determine whether the classified information in question is discoverable at all. See United States v. Libby, 429 F. Supp. 2d 46, 47 (D.D.C. 2006) (holding that CIPA § 4 allows the Government to ask the Court to determine that classified information need not be produced at all). If the Court were to conclude that some or all of the information is

8

> discoverable, the Government would then need to decide . . . whether to produce the information to defense counsel subject to appropriate security clearance, [or] seek alternate relief under CIPA . . . . If, on the other hand, the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether his counsel is willing to submit to security clearance procedures.

United States v. Abu-Jihaad, No. 07-CR-57 (MRK), 2007 WL 2972623, at *2 (D. Conn. Oct. 11, 2007), affirmed by Abu-Jihaad, 630 F.3d at 143; see also Al Farekh, 2016 WL 4444778, at *3 ("Notwithstanding defense lawyers' security clearances, the very purpose of the ex parte filing would be defeated by their review of the materials contained" in the government's Section 4 motion); Isa, No. 11-CR-819 (RRM), ECF Doc. No. 64 at 10 ("[defense] counsel do not have a need to know as the Court has determined that the material at issue is not helpful or material to the defense).[2]

Similarly, in Libby, the district court was called upon to determine whether to permit defense counsel to review the government's CIPA Section 4 motion where defense counsel (and the defendant) held appropriate security clearances. 429 F. Supp. 2d 18, amended by 429 F. Supp. 2d. 46 (D.D.C. 2006). In deciding this issue, the district court emphasized that the key question was not whether defense counsel had the appropriate security clearance, but rather whether defense counsel had both a security clearance and a

---

[2] The possession of a security clearance may become relevant only after the district court determines, in accordance with CIPA, that specific classified information is discoverable. See United States v. Amawi, 695 F.3d 457, 473-74 (6th Cir. 2012). Should a court conclude that classified information is discoverable, however, the defense still would not necessarily be entitled to review it even if they possessed a valid security clearance. Rather, in lieu of such disclosure, the government could "seek alternative relief under CIPA – such as substitution of a summary or statement of the discoverable information – or file an interlocutory appeal under CIPA § 7." Abu-Jihaad, 2007 WL 2972623, at *2.

9

"need to know." As the Libby court explained, "[i]t is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses." Id. at 24 n.8. In short, as these authorities make clear, when the defense does not have a "need to know" with respect to certain classified information, a court filing that references that information may be made ex parte.

Second, Saleh contends that excluding defense counsel from access to the government's CIPA Section 4 motion and to the classified evidence underlying that motion would "deprive[]" Saleh "of his right to counsel at this stage and of the other fair trial rights to which he is constitutionally entitled." (Def. Mem. at 7). Saleh's argument fails because courts have consistently rejected the premise that CIPA Section 4's ex parte provision violates a defendant's right to due process or other similar constitutional rights. See, e.g., United States v. Dumesi, 424 F.3d 566, 577-78 (7th Cir. 2005) (ex parte CIPA Section 4 proceedings did not deny the defendant his right to counsel and fair trial); Klimavicius-Viloria, 144 F.3d at 1261-62 (ex parte CIPA Section 4 hearing does not violate the defendant's right to be present at all phases of trial); Yunis, 924 F.2d at 1094-95 (same); Isa, No. 11-CR-819 (RRM), ECF Doc. No. 64 at 10 (same); United States v. Ahmed, No. 10-CR-131 (PKC), 2011 WL 4915005, at *4-5 (S.D.N.Y. Sept. 23, 2011) (same).

Third, Saleh contends that an adversarial Section 4 proceeding is necessary because the Court "cannot properly function as Mr. Saleh's surrogate advocate" given that is has not "had an opportunity to review any discovery, consult with Mr. Saleh, or otherwise investigate the facts of this case" and therefore "cannot be expected to surmise the factual nuances of the defense." (Def. Mem. at 7). In fact, CIPA authorizes the Court to make

10

discovery determinations without any input from the defense. See 18 U.S.C. App. 3, § 4. And numerous courts have made such discovery determinations without the participation of the defense in the CIPA Section 4 process. See, e.g., Rezaq, 134 F.3d at 1143 ("We find that the district court did a commendable job of discharging its obligations under CIPA, and in particular that its orders protected [the defendant's] rights very effectively despite the fact that [the defendant's] attorney was unable to participate in the CIPA proceedings."); Isa, No. 11-CR-819 (RRM), ECF Doc. No. 64 at 12 ("[U]nder the circumstances of this case, the Court finds that a presentation by defense counsel – by submission, direct participation, or otherwise – is unnecessary."); Zazi, 2011 WL 2532903, at *3 ("[The defendant's] lawyers offer to apprise me of their theory of the case, ex parte, so that I may better understand what kind of material might be 'helpful' to the defense. I decline that offer because I am confident the presentation is unnecessary. The facts at issue are not complex and the basic contours of both the underlying plot and [the defendant's] alleged obstruction have been well established.").

Likewise, as noted above, Federal Rule of Criminal Procedure 16 provides that a court may order that discovery be "denied, restricted, or deferred" based on an ex parte showing. Fed. R. Crim. P. 16(d)(1); see also United States v. Gel Spice Company, Inc., 773 F.2d 427, 434 (2d Cir. 1985) ("Fed. R. Crim. P. 16(d)(1) permits an ex parte showing when a party seeks to prevent the inspection of documents that are alleged to be confidential.").

Indeed, there are various other statutorily and court-approved instances whereby discovery determinations requiring judicial imprimatur are made without the provision of input by the defense. For instance, the Jencks Act provides that if there is a question as to whether a statement potentially covered by the Act sufficiently relates to the

11

subject matter of a witness's testimony to be rendered discoverable pursuant to the Act, the government should "deliver such statement for the inspection of the court in camera" and the court shall rule on its discoverability. 18 U.S.C. § 3500(c). The procedure prescribed does not allow any opportunity for defense counsel to view the statement or provide the Court with their views as to its discoverability. Similarly, the federal courts have held on numerous occasions that the rule established in Brady v. Maryland does not endow a defendant with the right to inspect all evidence which is only potentially, and not actually, exculpatory, nor with the right to assess such evidence's materiality him or herself. See, e.g., Pennsylvania v. Ritchie, 480 U.S. 39, 59-61 (1987) (holding that while the procedure might deny a defendant "the benefits of an 'advocate's eye,'" a defendant's right to "a fair trial can be protected fully by requiring that [the potentially exculpatory materials] be submitted only to the trial court for in camera review"); United States v. Wolfson, 55 F.3d 58, 60 (2d Cir. 1995) ("A defendant's Brady request for discovery of exculpatory materials . . . does not give the defendant the right to compel the disclosure of documents that are not material for those purposes; nor does it give the defendant the right to assess materiality himself. To the extent there is a question as to the relevance or materiality of a given group of documents, the documents are normally submitted to the court for in camera review.").

As a result, the ex parte nature of proceedings under CIPA Section 4 does not prevent this Court from making appropriate determinations concerning the deletion of or substitution for classified information in discovery. In fact, here, Saleh has requested permission for his lawyers to make an ex parte presentation of their own to the Court in which they advise the Court of the categories of potentially classified information that "may

be relevant, material, and/or helpful to the defense." (Def. Mem. at 9).[3]  As the government advised defense counsel, the government has no objection to such an ex parte presentation in this case.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court permit the government to file its Section 4 motion ex parte for the Court's in camera review.

Dated:     Brooklyn, New York
           September 27, 2016

                                        Respectfully submitted,

                                        ROBERT L. CAPERS
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                              By:       /s/ Douglas M. Pravda
                                        Alexander A. Solomon
                                        Douglas M. Pravda
                                        Ian C. Richardson
                                        Assistant United States Attorneys
                                        (718) 254-7000

---

[3] The government notes that Saleh's request cites an incorrect standard.  Only classified information that is "helpful or material to the defense" is potentially discoverable; classified material that may be relevant but is not "helpful or material to the defense" is not discoverable.  See Abu-Jihaad, 630 F.3d at 141.

13